**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY HILL, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 897 |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | Suzanne B. Conlon |
| THOMAS DART, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(a)**

NOW COME Defendants, Sheriff Thomas Dart, Clarence Lacy, Commander Hugh Walsh, Lieutenant Leon Marmol, Sergeant James Holmes, and Officers Crystal Spivey, Darrell Bolton, Michael Contreras, Peter Chico, Brian Toro, and Cook County, by their Attorney, Anita Alvarez, Cook County State's Attorney, and through her assistant, Assistant State's Attorney Aaron R. Bond, and pursuant to Rule 56.1(a) of the Rules of the Northern District of Illinois file this statement of material facts as to which there is no genuine issue.[1]

1. Jurisdiction and venue are not disputed and this action is properly before this Court. (*Dkt. # 68*, *Defendants' Answer to Plaintiff's Third Amended Complaint*, ¶¶ 1-2)

2. Plaintiff in this action is Anthony Hill ("Plaintiff"), who is an adult currently domiciled at the Centralia Correctional Facility in Centralia, Illinois. Plaintiff was at the times mentioned in his lawsuit a detainee confined in the custody of the Cook County Department of Corrections ("CCDOC"), located at 2700 S. California Avenue, Chicago, Illinois. (*Dkt. # 68*, ¶ 3)

[1] Service was never completed on Defendants Willie Lewis, Daniel Moreci, Robert Bonakowski or Nicholas Bohlsen.

3. Defendants in this action are Thomas J. Dart, Sheriff of Cook County, CCDOC Officers Willie Lewis, Robert Bonakowski, Matthew Cobble, Nicholas Bohlsen, Michael Contreras, Brian Toro, Peter Chico and Crystal Spivey, CCDOC Sergeant James Holmes, CCDOC Lieutenant Leon Marmol, CCDOC Commander Hugh Walsh, CCDOC Superintendent Daniel Moreci, Cermak Health Services Medical Technician Clarence Lacy and Cook County. (*Dkt. # 67, Plaintiff's Third Amended Complaint*, ¶¶ 4-18)

4. Plaintiff voluntarily removed Defendant Darrell Bolton from Plaintiff's lawsuit. (*Dkt. # 60, Plaintiff's Motion for Leave to File Second Amended Complaint,* p. 2, ¶ 2; *Dkt. # 65, Plaintiff's Second Amended Complaint*, ¶¶ 4-18*; Dkt # 67*, ¶¶ 4-18)

5. The parties voluntarily stipulated to dismiss Defendant Cook County from County VI of the instant action and leave Cook County as a Defendant for purposes of indemnification only (Count VII). (*Dkt. # 55, Stipulation to Dismiss*)

6. On August 26, 2009, Plaintiff was admitted to the Cook County Department of Corrections ("CCDOC") as a pre-trial detainee and remained at CCDOC until the date of February 18, 2010, at which time Plaintiff was transferred to the Stateville Campus of the Illinois Department of Corrections. (*Def. Exh. B, Plaintiff's Deposition Transcript*, p. 17 line 12 – p. 18 line 7)

7. At the time of the filing of his lawsuit on February 9, 2009, Plaintiff was an incarcerated person. (*Dkt. # 1* p. 2, ¶ I, sub-¶¶ A-E; *Def. Exh. A, Plaintiff's Complaint*, p. 2, ¶ I, sub-¶¶ A-E; (*Def. Exh. B*, p. 17 line 12 – p. 18 line 7; p. 29 lines 6-13)

8. CCDOC General Order ("G.O.") 14.5 governing the Detainee Grievance Procedure was in full force and effect during the above-referenced time period of Plaintiff's incarceration at

CCDOC under CCDOC detainee number 2009-0057009. (*Def. Exh. D, Affidavit of John Mueller*, ¶¶ 1-2; *Id., Attachment 1)*

9. Under G.O. 14.5 detainees housed at CCDOC could initiate written grievances regarding circumstances or actions which they felt were discriminatory, oppressive or unjust and upon completion of the detainee grievance form, sworn personnel would collect the grievances and deliver the grievances to the Correctional Rehabilitation Worker ("CRW") in the respective division. (*Def. Exh. D,* ¶ 3)

10. Under G.O. 14.5 some grievances would be processed as a request as a way to resolve the issue but if the detainee was not satisfied with the response and/or attempt at resolving the issue, the detainee could resubmit the concern and it would be processed as a grievance. (*Def. Exh. D,* ¶ 3)

11. Under G.O. 14.5, if after a determination of the detainee's grievance, the inmate wished to appeal the decision, he or she could seek review from the Appeal Panel within fourteen (14) days of his or her receipt of the decision. *Def. Exh. D,* ¶ 3)

12. During the time period from November 1, 2009 through Plaintiff's release to IDOC on or about February 19, 2010, Plaintiff submitted seven grievances in accordance with the CCDOC detainee grievance procedure outlined in G.O. 14.5. (*Def. Exh.* E*, Affidavit of Joseph Consolo*, ¶ 1)

13. Plaintiff filed his first grievance on November 8, 2009; in said grievance Plaintiff, described an incident where excessive force was allegedly used against him by five ERT officers, named "Chico, Contreras, Toro, Bolterin and Holmes" and Plaintiff specifically requested "to be able to get surgery and be compensated for [his] injuries." (*Def. Exh.* E, ¶ 2; *Id., Attachment 1*)

14. This grievance from November 8, 2009 was received by CRW V. Butler on November 16, 2009 and was assigned control number 2009 x 2344; Plaintiff received a response to grievance number 2009 x 2344 on December 14, 2009; Plaintiff immediately appealed the grievance response on the same date and the Appeal Board's response to Plaintiff's appeal was mailed to Plaintiff at IDOC on March 10, 2010. (*Def. Exh.* E, ¶ 3; *Id., Attachment 1*)

15. On November 20, 2009, Plaintiff submitted a second grievance form in which he described being denied medical attention at Cermak Hospital on November 6, 2009, that staff at the hospital were mean and nasty to Plaintiff and released Plaintiff without checking him out; Plaintiff specifically requested "to be properly placed in the medical unit." (*Def. Exh.* E, ¶ 4; *Id., Attachment 2*)

16. Said grievance was received by CRW V. Butler on December 1, 2009 and was assigned control number 2009 x 2473; Plaintiff received a response to grievance number 2009 x 2473, on December 10, 2009; Plaintiff immediately appealed the grievance response on the same date and the Appeal Board's response to Plaintiff's appeal was mailed to Plaintiff at IDOC on March 10, 2010. ((*Def. Exh.* E, ¶ 5; *Id., Attachment 2*)

17. Also on November 20, 2009, Plaintiff submitted a third grievance form in which he alleged that CCDOC staff walked away from Plaintiff after telling them that he needed medical attention as a result of being beaten by ERT officers on November 5, 2009; Plaintiff specifically requested "that get a MRI and surgery to repair my knee and all medical that is needed." (*Def. Exh. E,* ¶ 6; *Id., Attachment 3*)

18. Said grievance was received by CRW V. Butler on December 1, 2009 and was assigned control number 2009 x 2474; Plaintiff received a response to grievance number 2009 x 2474, on December 10, 2009; Plaintiff immediately appealed the grievance response on the same date and

the Appeal Board's response to Plaintiff's appeal was mailed to Plaintiff at IDOC on March 10, 2010. (*Def. Exh. E*, ¶ 7; *Id.*, *Attachment 3*)

19. On November 29, 2009, Plaintiff submitted a fourth grievance form in which he complained of needing medical attention for injuries sustained during an alleged beating which occurred at the hands of ERT officers on November 5, 2009; Plaintiff specifically requested "to have my nose and knee repair and to be compensated for the trauma I received" (*Id.*, ¶ 8; *Id.*, *Attachment 4*)

20. On December 2, 2009, Plaintiff submitted a fifth grievance form in which made substantially the same allegations as he did in his November 29, 2009 grievance; Plaintiff specifically requested "to be taken to an outside hospital for a MRI and knee and nose repair." (*Id.*, ¶ 9; *Id.*, *Attachment 4*)

21. Both the November 29, 2009 and December 2, 2009 grievances were received by a CRW on December 8, 2009 and, because the grievances dealt with the same subject matter, said grievances were consolidated and assigned control number 2009 x 2534; Plaintiff received a response to grievance number 2009 x 2534, on December 31, 2009; Plaintiff immediately appealed the grievance response on the same date and the Appeal Board's response to Plaintiff's appeal was mailed to Plaintiff at IDOC on March 10, 2010. (*Def. Exh. E*, ¶ 10; *Id.*, *Attachment 4*)

22. On January 1, 2010, Plaintiff submitted a sixth grievance form in which he alleged being beaten by several ERT officers on November 5, 2009, and also alleged being denied proper medical attention subsequent to the alleged beating; Plaintiff specifically requested "to get a MRI and to file charges against those ERT officers." (*Def. Exh. E*, ¶ 11; *Id.*, *Attachment 5*)

23. Said grievance was received by CRW Deanes on January 19, 2010 and was assigned control number 2010 x 0183; the response to grievance number 2010 x 0183, was mailed to Plaintiff at IDOC on March 11, 2010 and Plaintiff never appealed the response to grievance number 2010 x 0183. (*Def. Exh. E*, ¶ 12; *Id., Attachment 5*)

24. On January 10, 2010, Plaintiff submitted a seventh grievance form in which he alleged being denied proper medical attention; Plaintiff specifically requested "a MRI and to get a phsy [sic] evaluation for my mental issues" (*Def. Exh. E*, ¶ 13; *Id., Attachment 6*)

25. Said grievance was received by CRW Deanes on January 19, 2010 and was assigned control number 2010 x 0179; Plaintiff received a response to grievance number 2010 x 0179, on January 27, 2010 and Plaintiff never appealed the response to grievance number 2010 x 0179. (*Def. Exh. E*, ¶ 14; *Id., Attachment 6*)

26. Plaintiff did not submit any further grievances or grievances processed as requests from November 1, 2009 up through his release to IDOC on or about February 19, 2010. (*Def. Exh. E*, ¶ *15*)

27. In particular, Plaintiff submitted no grievances relating to any incidents from November 3, 2009 involving Plaintiff and an Officer Lewis nor did Plaintiff submit any grievances relating to any incidents from January 13, 2010 involving Plaintiff and Officers Walsh and Lewis. (*Def. Exh. E*, ¶ *16)*

28. Plaintiff cannot remember whether he filed a grievance regarding the incidents described in Plaintiff's complaint which allegedly occurred on November 3, 2009 and January 13, 2010. (*Def. Exh. B*, p. 71 line 11 – p. 72 line 16; p. 204 line 24 – p. 205 line 3).

29. Plaintiff certified, signed and mailed to the district court his complaint at law on a Friday during the first week of January 2010. (*Def. Exh. A*, p. 6; *Def. Exh. B*, p. 27 line 6 – p. 28 line 19)

30. Plaintiff's complaint at law was received and filed by the District Court on February 9, 2010 . (*Dkt # 1*, p. 1; *Def. Exh. A*, p. 1)

31. CCDOC G.O. 9.16 governing the Use of Force was in full force and effect during the above-referenced time period alleged in Plaintiff's lawsuit; in particular, said G.O. was in force and effect from September 20, 2002 through approximately September of 2011. (*Def. Exh, F, Deposition Transcript of Officer Michael Contreras*, p. 14 lines 4-19; *Id*., Exhibit # 1).

32. Officers at CCDOC are trained initially on the use of force at the Sheriff's Academy and are subsequently trained on the use of force at least once a year during in-service trainings. (*Def. Exh. F*, p. 11 lines 16-24; *Def. Exh. G*, *Deposition Transcript of Officer Peter Chico,* p. 14 line 22 – p. 15 line 10)

33. Said trainings on the use of force include each officer being familiarized with the Use of Force Paradigm, going through, step by step, the situations where force should be used and the type of appropriate force to be used in situations. (*Def. Exh. G*, p. 14 line 22 – p. 15 line 10; *see also Def. Exh. F, Deposition Exhibit #1, "Use of Force Model/Paradigm,"* )

34. Videos on the use of force are shown during the use of force trainings and tests are also administered during use of force trainings. (*Def. Exh. F*, p. 12 line 7 – p. 13 line 11)

35. G.O. 9.16 and the "Use of Force Model/Paradigm" were used to train officers on the use of force during their in-service trainings and were used by officers when dealing with inmates at CCDOC. (*Def. Exh, F*, p. 14 line 4 – p. 15 line 1; p 48 lines 9-11; *Def. Exh. G*, p. 16 line 15 – p. 17 line 5)

36. In addition, as part of their training on the use of force, officers also receive classroom training from instructors and engage in "Redman scenarios" and "Redman drills" where officers role play and engage in practical scenarios. (*Def. Exh. H, Deposition Transcript of Officer Brian Toro*, p. 10 line 14 – p. 12 line 13)

37. Medical service request forms are the main way in which detainees request medical attention at the jail and are provided to detainees, upon request, by Correctional Officers or medical staff. (*Def. Exh. I. Affidavit of Officer Crystal Spivey*, ¶ 5; *Def. Exh. J, Affidavit of Sergeant Leon Marmol*, ¶ 5

38. Once the detainee fills out the form he may submit it to the Correctional Officer who is on duty on the tier and at the end of each shift all inmate medical service requests which have been submitted and or collected by Correctional Officers are submitted by the Correctional Officer on duty to medical staff within the specific Division of CCDOC. (*Def. Exh. I*, ¶ 5; *Def. Exh. J*, ¶ 5)

39. When a detainee requests medical attention from a Correctional Officer on the tier it is the responsibility of the Correctional Officer to either: a) provide the detainee with a medical service request form to fill out; b) notify a supervisor, if the situation warrants, such as where an inmate has a visible injury or displays obvious symptoms of injury; c) notify medical personnel, if the situation warrants, such as where an inmate has a visible injury or displays obvious symptoms of injury; or d) all of the above. (*Def. Exh. I*, ¶ 6; *Def. Exh. J*, ¶ 6)

40. Once a request for medical treatment is made by a detainee, correctional officers and correctional staff and personnel are not responsible for scheduling the detainee to receive medical care; rather, correctional officers and correctional staff are only responsible for the following: a) forwarding medical requests to the medical unit; b) notifying medical personnel

when a detainee requires immediate medical attention; c) transporting detainees to medical appointments; and d) securing detainees during said transports and medical appointments. (*Def. Exh. I*, ¶ 7; *Def. Exh. J*, ¶ 7)

41. At some point during the 7:00 A.M. – 3:00 P.M. shift on November 29, 2009, Plaintiff made an inquiry to Officer Spivey regarding medical service; specifically, Mr. Hill made an inquiry regarding an x-ray. (*Def. Exh. I*, ¶ 8)

42. Plaintiff's medical request on November 29, 2009 was documented by Officer Spivey in her Officer's Living Unit Log Book (*Def. Exh. I*, ¶ 10; *Id*., *Attachment 1*)

43. Subsequent to receiving this request from Plaintiff of November 29, 2009, Officer Spivey notified paramedic/EMT Brittman of Plaintiff's request. (*Def. Exh. I*, ¶ 9; *Id*., *Attachment 1*)

44. Officer Spivey's notification of EMT/paramedic Brittman on behalf of Mr. Hill was documented by Officer Spivey in her Officer's Living Unit Log Book and it was Officer Spivey's common practice to notify an inmate, such as Plaintiff, what paramedic/EMT Brittman's response was to the medical request. (*Def. Exh. I*, ¶ 10; *Id*., *Attachment 1*)

45. Plaintiff is unaware of what actions Officer Spivey took after Officer Spivey met with Plaintiff on November 29, 2009. (*Def. Exh. B*, p. 227 line 8 – p. 228 line 19)

46. Had Lieutenant Marmol received a medical request from Plaintiff, his custom and practice as a CCDOC Sergeant would have been to do one of the following: a) tell Plaintiff to fill out a medical service request form; b) provide Plaintiff with a medical service request form to fill out; c) notify medical personnel of Plaintiff's request, if the situation warranted; or d) all of the above. (*Def. Exh. J*, ¶ 11)

47. Plaintiff is unaware of what actions Lieutenant Marmol may have taken with regards to Plaintiff after allegedly speaking with Plaintiff on November 14 or 24, 2009. (*Def. Exh. B*, p. 226 lines 6-19)

48. Plaintiff was medically treated and received x-rays in the Emergency Room ("ER") of Cermak Health Services of Cook County ("Cermak") on November 5, 2009 and Plaintiff's medical exam revealed no acute injuries. (*Def. Exh. K, Affidavit of P.A. Manisha Patel*, ¶ 7; *Id. Attachment 1*, p. 8 CCSAO, p. 24-27 CCSAO, p. 59-61 CCSAO; *Def. Exh. C, Affidavit of Linda Kampe*, *Attachment 1*, p. 8 CCSAO, p. 24-27 CCSAO, p. 59-61 CCSAO)

49. On December 8, 2009, Plaintiff was medically treated by a Physician Assistant ("P.A.") at Cermak and was given an orthopedics referral for his knee and prescribed Naprosyn for pain due to Plaintiff complaining of chronic knee pain. (*Def. Exh. K*, ¶ 8; *Id. Attachment 1*, p. 48 CCSAO, p. 57 CCSAO; *Def. Exh. C Attachment 1*, p. 48 CCSAO, p. 57 CCSAO)

50. On December 24, 2009, Plaintiff was medically treated by P.A. Manisha Patel due to complaints of pain in his left wrist, left knee, left ankle and right side of his ribs and I re-prescribed Naprosyn for Plaintiff for pain, re-prescribed blood pressure medication, prescribed an ace bandage for his left knee and made a notation in his medical chart to consider physical therapy. (*Def. Exh. K*, ¶ 9; *Id. Attachment 1*, p. 47 CCSAO; *Def. Exh. C, Attachment 1*, p. 47 CCSAO)

51. On December 28, 2009, Plaintiff received blood work testing. (*Def. Exh. K*, ¶ 10; *Id. Attachment 1*, p. 29-30 CCSAO; *Def. Exh. C Attachment 1*, p. 29-30 CCSAO)

52. On January 7, 2010, Mr. Hill was medically treated by P.A. Manisha Patel for purposes of a follow up for the December 28, 2009 blood work as well as for knee pain and I also ordered or

re-ordered physical therapy for Plaintiff. (*Def. Exh. K*, ¶ 11; *Id. Attachment 1*, p. 42 CCSAO; *Def. Exh. C, Attachment 1*, p. 42 CCSAO)

53. On January 7, 2010, Mr. Hill was also medically treated by an orthopedist at Cermak and was prescribed a non-steroid anti inflammatory drug ("NSAID"). (*Def. Exh. K*, ¶ 12; *Id. Attachment 1*, p. 57 CCSAO; *Def. Exh. C, Attachment 1*, p. 57 CCSAO)

54. On January 8, 2010 Plaintiff received a urine culture. (*Def. Exh. K*, ¶ 13; *Id. Attachment 1*, p. 32 CCSAO; *Def. Exh. C Attachment 1*, p. 32 CCSAO)

55. On January 12, 2010 Plaintiff received an ultrasound of his scrotum. (*Def. Exh. K*, ¶ 14; *Id. Attachment 1*, p. 27-28 CCSAO; *Def. Exh. C Attachment 1*, p. 27-28 CCSAO)

56. On January 28, 2010, Plaintiff was medically treated by a doctor from Cermak for skin care issues and a rash and received several prescriptions for said skin issues. (*Def. Exh. K*, ¶ 15; *Id. Attachment 1*, p. 1066 CCSAO; *Def. Exh. C*, *Attachment 1*, p. 1066 CCSAO)

57. On February 4, 2010, Mr. Hill was medically treated by Dr. Mohammed Mansour, at which time a follow up with orthopedics was ordered. (*Def. Exh. K*, ¶ 16; *Id. Attachment 1*, p. 39 CCSAO; *Def. Exh. C, Attachment 1*, p. 39 CCSAO)

58. On February 15, 2010, Plaintiff received physical therapy at Stroger Hospital of Cook County. (*Def. Exh. K*, ¶ 17; *Id. Attachment 1*, p. 23-24 CCSAO; *Def. Exh. C*, *Affidavit of Linda Kampe Attachment 1*, p. 23-24 CCSAO)

59. On November 5, 2009, Plaintiff was seen in the medical dispensary for approximately 10 minutes before being transported from the dispensary to Cermak Hospital for further treatment; during his time in the dispensary Plaintiff received an ice pack from CMT Clarence Lacy. (*Def. Exh. B*, p. 136 lines 15-22, p. 140 line 13 – p. 144 line 24).

60. After leaving the dispensary to go to Cermak Hospital Plaintiff did not have any further interaction with CMT Lacy for the remainder of the day on November 5, 2009. (D*ef. Exh. B*, p. 148 lines 6-13)

61. During the time period of Plaintiff's incarceration at CCDOC under detainee number 2009-0057009, General Orders 12.1 – 12.9 & 12.11, relating to Medical and Health Care Services for detainees, were in full force and effect. (*Def. Exh. L*, *Affidavit of Peter Kramer*, ¶ 3; *Id.*, *Attachment 1*)

Respectfully submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By: *_/s/ Aaron R. Bond_*____________
Aaron R. Bond
Assistant State's Attorney
Richard J. Daley Center
50 West Washington, Suite 500
Chicago, IL 60602
(312) 603-5153