**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANTHONY HILL,                    )
                                 )
            Plaintiff,           )          10 C 897
                                 )
      vs.                        )          Honorable Judge
                                 )          Suzanne B. Conlon
THOMAS DART, et. al.,            )
                                 )
            Defendants.          )

# DEFENDANTS' EXHIBIT L

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY HILL, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 897 |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | Suzanne B. Conlon |
| THOMAS DART, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF PETER KRAMER GENERAL COUNSEL OF THE
LEGAL AND LABOR AFFAIRS DIVISION OF THE
COOK COUNTY SHERIFF'S OFFICE**

I, Peter Kramer, General Counsel, Legal and Labor Affairs Division of the Cook County Sheriff's Office, being first duly sworn under oath and state that the following is based upon my personal knowledge that I can testify to and that if I were called to testify, my testimony would be:

1.      That I am currently the General Counsel of the Legal and Labor Affairs Division of the Cook County Sheriff's Office.

2.      That part of my duties includes knowledge of the records regarding General Orders to be followed by employees of the Cook County Sheriff's Office.

3.      That during the entire time period of Plaintiff's incarceration under detainee number 2009-0057009 from August 26, 2009 – February 18, 2010, the attached General Orders, bates stamped pages 1068-1113 (*"Attachment 1"*), were in full force and effect:

(1) *General Orders 12.1 – 12.9 & 12.11 – Medical and Health Care Services*

1

FURTHER AFFIANT SAYETH NOT.

Peter Kramer
Cook County Sheriff's Office
General Counsel
Legal and Labor Affairs Division

SUBSCRIBED AND SWORN TO
Before me this /2*th day of January 2012.

Notary Public

OFFICIAL SEAL
CAROLE MCFADDEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/01/15

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANTHONY HILL,                      )

             Plaintiff,      )      10 C 897

     vs.                   )      Honorable Judge

                        )      Suzanne B. Conlon

THOMAS DART, et. al.,       )

            Defendants.   )

# DEFENDANTS' EXHIBIT L
# *Attachment 1*



| COOK COUNTY CORRECTIONS DEPARTMENT GENERAL ORDER | DISTRIBUTION A | EFFECTIVE DATE 04/01/84 | GENERAL ORDER NO. 12.1 |
|---|---|---|---|
| CHAPTER  MEDICAL AND HEALTH CARE SERVICES | | AMENDS | RESCINDS |
| SUBJECT  MEDICAL PROGRAM ADMINISTRATION | | | |

## I. POLICY

The Director of Cermak Health Services is the present responsible health authority for the Cook County Department of Corrections. The principal obligation of Cermak is to provide adequate health care to the inmates of the Cook County Department of Corrections. Since Cermak is a separate department from the Cook County Department of Corrections, its Director confers with the Executive Director of the Cook County Department of Corrections and his designees regarding the enforcement, formulation or revision of policies and procedures affecting the detainees access to health care services and Cermak/Cook County Department of Corrections staff relationships. The Director of Cermak reports to the office of the Chief Administrative Officer of Cook County.

The medical program shall be managed and directed by the Director of Cermak in conjunction with a fully licensed Medical Director authorized to practice in this jurisdiction. The Medical Director shall be responsible for clinical supervision of all physician and allied health personnel within the facility and have sole responsibility for all final medical judgments relating to patient care in the institution. The Medical Director shall report to the Medical Director of Cook County Hospital for medical supervision and to the Director of Cermak for administrative direction.

A. All matters of medical judgment are the sole province of the physicians working for, or under contract with Cermak.

B. All security regulations which apply to facility personnel shall apply also to physician staff.

C. The Medical Director shall be responsible for planning and developing adequate staffing programs for the health care program. The medical staffing program shall be evaluated at least annually. Recommendations for revision shall be submitted to the Director with information copies provided to the Medical Director at County Hospital and the Cook County Department of Corrections Executive Director.

D. The Medical Director shall serve as a member of the Director staff and actively participate in the establishment of institutional goals and program development.

## II. DEFINITIONS

As used in this document, the following definitions shall apply:

ALLIED HEALTH PERSONNEL

1068
CCSAO

Professional employees who provide services to patients usually ordered by a physician or dentist. Typically, Dental Hygienist, Registered Nurses, Occupational Therapist, Medical Librarian, and similar professional groups are considered Allied Health Personnel.

I. PROCEDURES

A. Allied Health Personnel

All allied health personnel shall be licensed, registered or certified in their respective disciplines. This licensure or certification status shall be verified prior to hiring of any allied health personnel. Appropriate credentials shall be maintained in the files of the facility medical unit and those of the health services division, Central Office.

1. All allied health personnel shall follow the written job descriptions on file at the facility as approved by the Medical Director.

2. Physician Assistants shall work under clinical supervision of the facility Medical Director and shall function in accordance with the regulations for Physician's Assistants as promulgated by the State Board of Registration in Medicine.

3. All physical examinations shall be approved only by a fully licensed Physician or Physicians' Assistant who shall review exam results and cosign the medical records.

4. Health care provided by a medical staff member other than a Physician, Dentist or other professional independently authorized to provide treatment, shall be pursuant to orders issued by those personnel authorized by law to give such orders.

5. When students and/or interns are utilized in health care delivery to inmates, their services shall be supervised by a fully qualified professional. The Medical Director shall provide written policy and procedure to limit student or intern services to a level commensurate with level of training.

B. Orientation and Training for Medical Personnel

All medical personnel shall attend the employee orientation program and all appropriate training as follows:

1. It is the responsibility of each member of the medical staff to meet the requirements for continuing education pertaining to that individual's licensure status. The facility provides employees educational leave and limited tuition assistance for this purpose if so approved by the training and budget committees.

2. A medical library is maintained and makes available to the medical staff a variety of standards publications relating to

1069
CCSAO

their fields.

C. Medical Training for Correctional Personnel

All correctional personnel working with inmates shall be trained in a first aid program equal to that defined by the Red Cross as part of the standard training program. Each correctional employee also shall attend a training program conducted by the health care staff which includes the following:

1. Types of and action required for potential emergency situations.
2. Signs and symptoms of an emergency
3. Administration of first aid
4. Methods of obtaining emergency care
5. Procedures for transferring patients to appropriate medical facilities or health care providers
6. Symptoms of chemical dependency, emotional disturbance developmental disability and mental retardation.

D. Medical Administrative Reports

Health care reports shall be forwarded as follows:

1. A quarterly report shall be due on the 15th of January, April, July and October and the statistical summary on February 1st of the following year.

   Quarterly reports shall be prepared as follows:

   a. The report shall consist of a narrative divided into three main sections.

      1. Achievements
      2. Problem Areas
      3. Future Goals

   b. The "Achievements" section shall focus on any new or completed projects, policies, procedures, staff, equipment and services that have been accomplished during the past three months.

   c. The "Problem Areas" section shall focus on areas currently under revision those in need of improvement or on specific needs of the unit. This could include the for additional staff, specific supplies or services and revised procedures.

   d. The "Future Goals" section shall focus on areas requiring immediate planning for improvement. Examples of such goals are AMA or ACA accreditation, additional training for staff or additional dental services.

3. Annual Statistical Report shall meet the following criteria:

a. The medical records staff shall compile the statistics

CCSAO
1070

required to complete the annual statistical summary. Separate logs shall be maintained to record such data, regularly reviewed, updated and periodically reviewed by the physicians.

b. The specific items of the report shall be determined by the Medical Director. However, at a minimum, the following information shall be gathered and compiled.

1. Number of inmates receiving complete health appraisals by medical staff.
2. Number of laboratory referrals.
3. Number of positive results of TB test and other communicable diseases.
4. Number of hospital transfers specifying the hospitals.
5. Number of consultation referrals specifying the hospitals or clinics.
6. Number of ambulance services needed.
7. Number of referrals to facility consultants, e.g. psychiatrist, dentist.
8. Number of medical and dental prosthesis needed.
9. Number of transfers to the institution.

E. <u>Inmate Workers</u>

All inmate workers shall be prohibited from performing the following tasks:

1. Providing direct care services
2. Scheduling appointments
3. Determining the access of other inmates to health care services
4. Handling surgical instruments
5. Operating equipment on which they are not appropriately trained
6. Having access to surgical instruments, syringes, needles, pharmaceuticals or health records.

1071
CCSAO

| COOK COUNTY CORRECTIONS DEPARTMENT GENERAL ORDER | DISTRIBUTION A | EFFECTIVE DATE 04/01/84 | GENERAL ORDER NO. 12.2 |
|---|---|---|---|
| CHAPTER MEDICAL AND HEALTH CARE SERVICES | | AMENDS | RESCINDS |
| SUBJECT HOSPITAL FACILITIES AND EQUIPMENT | | | |

## I. POLICY

All inmates are provided health care services at a level appropriate to meet individual and group medical needs. The facility maintains contact with outside local hospitals which are fully licensed and accredited to provide services for all inmates whose health care needs cannot be provided either within the clinic or infirmary, or by transfer to another medical facility. All medical facilities and equipment are maintained at a level that enables medical staff to perform their duties in accordance with the specific procedures required by their professional specialty. Health Care facilities and equipment conform to the following requirements:

A. The equipment, supplies and materials for services are provided and maintained as determined by the Medical Director.



B. First aid kits are available in designated areas.

C. Both medical and dental care is available for emergencies on a 24-hour basis.

D. Medical, dental or orthopedic devices are provided if the absence of such device would adversely affect the health of the inmate patient. This shall be determined by the Medical Director.

E. Restraints shall be used for medical or psychiatric purposes only when specifically approved by the Medical Director or designee.

## II. DEFINITIONS

As used in this document, the following definitions shall apply:

A. Outside Hospital

Any hospital or clinic located outside the perimeter of the facility.

B. Self-Care

Care for a condition which can be treated by the inmate and may include over-the-counter type medications. Self-Care shall be encouraged by the health care staff through daily availability of non-prescription medication, e.g. aspirin, cough medicine, ice pack, consultation.

C. First Aid

1072
CCSAO

Care for a condition which requires immediate assistance from a person trained in first aid care and the use of the facility's first aid kits.

D. Emergency Care

Care for an acute illness or unexpected health care need that cannot be deferred until the next scheduled sick call. Emergency care shall be provided to the inmate population by the Medical Director, physician, other staff, local ambulance services and/or outside hospital emergency rooms. This care shall be expedited by following specific written procedures for medical emergencies described in this document.

E. Clinic Care

Health care for an ambulatory inmate whose complaints are evaluated and treated at sick call or by special appointment. The medical staff shall provide clinic care through regularly scheduled sick call conducted by a Physician, Medical Officer, Dentist, eye doctor or other health care staff. Off-site consultations with clinics, hospitals and other health care facilities may be provided through scheduled appointments arranged by the facility physician.

F. Infirmary Care

In-patient bed care for illness or diagnosis which requires limited observation and/or management and does not require admission to a licensed hospital. Infirmary care shall be provided to the inmate population through the institutional infirmary located in the medical services building.

G. Hospitalization

In-patient care for illness or diagnosis which requires optimal observation and/or management in a licensed hospital. Inmates shall be transferred to community or correctional medical facilities. Generally, hospital admissions shall be arranged between the facility physician and the consulting physician of the admitting hospital.

III. PROCEDURES

A. Routine Transfers

The hospital for both in-patient care and off-site specialty consultation is Cook County hospital. All transfers to Cook County hospital shall be made only with authorization of the Medical Director or the physician on call. No transfer shall be initiated without prior doctor-to-doctor communication in accordance with the guidelines set forth below.

1. Non-emergency in-patient care and specialty consultations shall be approved only by the Medical Director or

designated physician. Whenever medically feasible, all routine in-patient care and out-patient specialty consultations shall be arranged in advance.

2. By the evening before, the medical staff shall provide appropriate security staff with a list of all scheduled hospital or clinical trips for the following week. It is the responsibility of the Chief of Security to arrange for proper transportation and security coverage for each medical transfer. When ambulance transport is required, the medical staff shall make the necessary arrangement's by using Cermak's or a local ambulance service and notify the appropriate security personnel.

3. Referral to hospitals other than Cook County hospital shall be made only with the approval of the Medical Director or a designated physician.

4. When admission to a hospital other than Cook County is necessary, it is the responsibility of the Medical Director or designee to monitor the patient's condition and to arrange transfer to the Cook County hospital as soon as is medically feasible and following consultation with the appropriate physician(s).

B. <u>Emergency Medical Transfers</u>

All emergency transfers shall be made by ambulance to the emergency rooms of Cook County hospital which is open on a 24-hour basis. All emergency medical transfers shall be approved by the Medical Director or designee, and shall be accomplished as follows:

1. The facility has available 24-hour on-call coverage by qualified medical staff. The senior medical staff employee on duty shall arrange transportation to the hospital emergency room and notify security personnel who shall be responsible for organizing appropriate security coverage.

2. Emergency medical transfers shall be made only on the authorization of the Medical Director or the designated physician.

3. The Correctional Officers assigned at Cermak's "Back Door" area shall notify the Cook County Department of Corrections' Security Chief and the correctional staff at Cook County hospital of each emergency medical transfer

4. The Medical Director, or designee, shall be responsible for helping arrange the transfer of inmates from an emergency room other than Cook County hospital to the Cook County hospital as soon as such a transfer is practical and medically feasible.

5. Following authorization, the patient shall be transferred by ambulance or other means as authorized by the Medical Director or his designee.

6. Following the stabilization and treatment of the patient at the Cook County hospital emergency room or on the specialty wards, any patient requiring hospital admission shall be transferred to Ward 75 at Cook County hospital correctional unit for in-patient care.

7. It is the responsibility of the Medical Director or designee to monitor the medical status of any patient admitted to an outside hospital and to arrange the return of the patient to the facility, or other departmental medical unit, as soon as such a transfer is medically feasible.

C. Disaster Plans

The Director of Cermak in concert with the Medical Director has helped prepare a facility disaster plan approved by the Director of the Cook County Department of Corrections. This plan covers man-made or natural disasters, including fire, riot and other mass-casualty situations. The plan includes provisions for the following:

1. Emergency evacuation of residents from within the facility

2. Triage of large numbers of casualties

3. Use of emergency medical vehicles

4. Use of local hospital emergency rooms

5. Communication procedures for medical staff

6. Security procedures providing for the immediate transfer of inmates.

D. Hunger Strike

In all cases where an inmate initiates a hunger strike, the following protocol shall be implemented:

1. The inmate shall be offered a medical evaluation by the Medical Director. The inmate's acceptance or refusal shall be documented, signed and witnessed.

2. If the inmate refuses the medical examination, he shall be offered vital sign monitoring on a daily basis. This must be documented and witnessed on each patient encounter.

3. Correctional staff shall view the inmate at least three times daily for assessment of his physical condition.

4. If indicated, the inmate will be housed in an area where close medical observation is available.

1075
CCSAO

E.  Use of Therapeutic Restraints

Medical personnel shall utilize restraints only as a last resort for patients who present a danger to self and others, e.g., assualtive behavior towards medical staff or other patients, suicidal behavior, attempts to remove tubes or dressings necessary for care, self-inflicted skin irritation. Under no circumstances shall restraints be used as a disciplinary measure or as a convenience for institutional medical staff.

1.  The use of restraints in the institutional medical units shall be approved only by the Medical Director, staff physician or staff psychiatrist. Other medical personnel as designated by Cermak's "Restraint" committee may initiate restraints based on the "Guidelines for Use of Therapeutics Restraints" protocol. The on duty physician or psychiatrist shall document the initiation of restraints by writing an order within 4 hours. All prescriptions for restraints shall be signed by the authorizing physician or psychiatrist and entered in the appropriate section of the medical record.

2.  The prescription for such restraint measures shall include the purpose of and clinical justification for the type of restraint used and the length of time for which restraint measures are to be imposed, not to exceed 12 hours. If further restraint is required beyond the maximum 12 hours, a new prescription must be issued by a facility physician based upon observation of the patient's behavior and clinical condition. The determination for restraint removal shall be made by the physician or psychiatrist or by a member of the allied health care staff following consultation with the physician or psychiatrist.

3.  Patients receiving therapeutic restraint measures shall be observed visually by a member of the medical staff no less frequently than every 30 minutes. Each visual check shall be recorded in the patient's chart or record and signed by the documentor.

4.  The type of restraint shall be selected and applied so as to cause the least possible discomfort and shall be administered in a humane manner. Unless there is an immediate danger of harm to self or others, therapeutic restraints shall be applied loosely as permits some freedom of movement. These special medical problems shall be communicated to all facility staff. Any medical problem which may require an ongoing treatment regimen shall be discussed with the Director of Health Services or designee for recommendations for and approval of treatment success.

G.  Examination Rooms

The facility maintains adequately equipped examination rooms

CCSAO

used solely for treatment thus ensuring privacy and dignity for both patients and medical staff.

1.  Each of the examination rooms are equipped with:

    a.  Thermometer
    b.  Blood pressure cuff and sphygmomanometer
    c.  Stethoscope
    d.  Ophthalmascope
    e.  Otoscope
    f.  Percussion hammer
    g.  Scale
    h.  Examination table
    i.  Goose neck light
    j.  Refrigerator with lock
    k.  Medical record files
    l.  Telephone
    m.  Medicine cabinet with lock

2.  All examination rooms provide a hand wash sink equipped with hot and cold running water. Sinks not located within the examination room itself, shall be located in an immediately accessible area adjacent to the examination room.

H. Prosthesis

Medical prostheses shall be available to inmates in accordance with the following conditions:

1.  If the health of the inmate otherwise would be affected adversely, medical and dental prostheses shall be provided.

2.  The responsible physician or dentist shall determine which cases warrant this treatment.

3.  The institution shall either provide the necessary prostheses free of charge to the inmate when necessary or make arrangements with an appropriate agency for possible funding.

4.  The inmate shall be required to pay for non-essential prostheses in those cases where the health of the inmate is not affected adversely without the prostheses. This shall be determined by the responsible doctor or dentist.

5.  For medical prostheses consideration the procedures below shall be followed:

    a.  Inmate requests for physician scheduling to obtain medical prostheses shall be referred to see a physician in "sick call".

    b.  The responsible physician shall examine the inmate

6          6    GO    12.2

1077
CCSAO

and record results of the examination in the inmate's medical record.

c. If the physician determines that the inmate's health would be adversely affected without the necessary medical prostheses, the following steps shall be taken:

(1) The responsible physician shall arrange for a consultation.

(2) Both verbal and written contact shall be made to arrange for an appointment for the inmate.

(3) Appropriate medical records shall be forwarded, as needed, with prior written consent obtained from the inmate.

(4) After the evaluation, the consultant will forward results to the requesting physician.

d. The physician shall record all pertinent data on the inmate's medical record.

e. If the physician determines that the medical prostheses is not required, this decision shall be so noted in the inmate's medical record. In this case the inmate may choose to pay for the prostheses himself.

I. Location and Content of First Aid Kits

First aid kits shall be maintained in the following areas:

1. Each housing unit (one kit)
2. The office of the department head for the following areas:

   a. Food services
   b. Mechanical services
   c. Safety officer
   d. Correctional supervisor

3. At a minimum, each first aid kit shall contain the following items:

   a. Roller gauze
   b. Sponges
   c. Triangle bandage
   d. Adhesive bandages
   e. Bandage-aids
   f. Instruction pamphlets for first aid
   g. Ace wrap
   h. Tongue blade

4. The location and utilization of first aid kits shall be reviewed at least annually by the Medical Director or designee, and an evaluation report shall be

1078
CCSAO

forwarded to the Director.



| COOK COUNTY CORRECTIONS DEPARTMENT **GENERAL ORDER** | DISTRIBUTION A | EFFECTIVE DATE 04/01/84 | GENERAL ORDER NO 12.3 |
|---|---|---|---|
| CHAPTER  MEDICAL AND HEALTH CARE SERVICE | | AMENDS | RESCINDS |
| SUBJECT  PHYSICAL EXAMINATIONS | | | |

## I.  POLICY

Each inmate is provided medical care from the time of admission, throughout the period of incarcerations, and until release.  This continuous care requires timely physical examinations which include medical screening of clinical complete physical examination and screening physical examination for each admission at the time of intake.  Complete physical examination on selected individuals (over 50 years of age), with chronic illnesses, recent injuries, acute illnesses, etc. at the time of admission to the Cook County Department of Corrections.  These examinations shall further include the following:

A.  The collection and recording of health care history and data as required by the Medical Director.

B.  Provisions as determined by the Medical Director to require periodic examinations of health for all inmates.

C.  Continuous health care from admission to discharge including referral to community care when indicated.

## II.  DEFINITIONS.

As used in this document, the following definitions shall apply:

A.  Physical Examination

A thorough evaluation of a patient's current physical condition and medical histories conducted by, or under the supervision of, a licensed professional

B.  Medical Screening

An examination of a patient conducted by a member of the medical staff.  The examination is intended to identify obvious ailments or injuries and reduce aggravation of the condition.

## III.  PROCEDURES

A.  New Admissions
Physical examinations shall be completed for each inmate newly committed to the facility or transferred from another institution.

1.  Receiving Screening

Prior to placement in the general population, each inmate shall be screened by a member of the medical staff.

1080
CCSAO

Findings of the screening shall be recorded on the Medical Entrance Screening form which is approved by institutional Medical Director. The receiving screening shall include at lease the following:

a. Inquiry into current illness and health problems including venereal diseases; medications taken; special health requirements; use of alcohol and other drugs including types of drugs used, make, amounts, frequency, date of last use and history of problems occurring from withdrawal and other health problems as designated by the Medical Director.

b. Observation of general behavior including state of consciousness, mental status, appearance, tremor or sweating, body deformities and ease of movement and jaundice, rashes, infestations, needle marks or other signs of drug abuse.

c. Recommendations for disposition to general population with referral to the appropriate physician or other staff member. Immediate referral to medical staff on an emergency basis.

2. Delousing

Each receiving screening shall include an examination for lice.

3. Admission Medical Examination

Each inmate shall receive a screening medical examination at the time of admission to the institution. Complete medical examinations will be done on selected individuals (over 50 years of age, with chronic illnesses, recent injuries, or acute illnesses, etc.) at the time of admission. The results of the screening tests for Tuberculosis (TB) and sexually transmitted diseases (STD) will be reviewed within 48-72 hours by the Cermak respective staff. All individuals detected at admission to have medical problems requiring follow-up care are referred to a Sick Call within the first 72 hours after admission.

4. Detoxification

When screening and examination result in a diagnosis of chemical dependency, requirements for that detoxification from alcohol, opiods, stimulants or sedative hypnotic drugs is determined by the Medical Director or designated physician.

B. Annual Physical Examinations

Each inmate shall receive a full physical examination annually within 30 days of the anniversary date of their admission to the

Cook County Department of Corrections.   All physical examinations shall include:

1.   Inquiry concerning:

    a.   Headache, recent head injury and loss of consciousness
    b.   Use of prescribed medicines
    c.   Chronic health problems such as heart disease, hypertension, seizure disorders, asthma, sickle cell disease, diabetes mellitus and tuberculosis
    d.   Regular use of barbiturates, sedative, opiates, alcohol and non-prescribed drugs including tobacco
    e.   Unusual bleeding or discharge
    f.   Recent fever or chills
    g.   Allergy to medication or other substances
    h.   Lacerations, bruises, abscesses, ulcers and itchiness
    i.   Prior significant illness and hospitalization
    j.   Familial and domiciliary disease of significance
    k.   Immunization status
    l.   Current symptoms and abnormalities in the nervous, gastrointestinal, respiratory, auditory, integumentary, endocrine, cardiovascular, ophthalmic, musculoskeletal and hempoetic systems

2.   Observation concerning:

    a.   Behavior which includes state of consciousness, mental status, appearance, conduct, tremor and sweating
    b.   Signs of trauma, recent surgery, abscesses, open wounds, parenteral drug use, jaundice, pediculosis and communicable disease
    c.   Body deformities, ease of movement, scars
    d.   Dental decay, filled and missing teeth

3.   Physical inspection including an examination of organs and structures with emphasis on the presence or absence of the following abnormalities:

    a.   Head – defects, contusions, lacerations and dried blood
    b.   Ears – gross hearing loss, blood/discharge fluid, eardrum, infection
    c.   Nose – blood and other discharges, recent injury
    d.   Eyes – bruises, jaundice, gross movements, pupil reactivity, visual acuity
    e.   Chest – labored or unusual breathing, penetrating wounds, heart, breast
    f.   Abdomen – tenderness, rigidity, signs of blunt injury, surgical scars
    g.   Genitalia – discharge, lesions, lice, a pelvic examination (female)
    h.   Extremities – sign of drug use, hyper-pigmentation of anti-cultural fossa, abscesses, deformity
    i.   Back – scoliosis, kypophis

4.   Diagnostic tests as requested by medical staff.

1082
CCSAO

5. Measurement of
   a. Weight        d. Respiration
   b. Height        e. Pulse
   c. Blood pressure    f. Temperature

C. Examinations for Communicable Disease

An inmate suspected of having contracted a communicable disease shall be examined medically. Inmates shall be examined by the medical staff of the institution. Where treatment by other outside providers is desired, prior authorization must be obtained verbally or in writing from the Medical Director, or designee.

| COOK COUNTY CORRECTIONS DEPARTMENT GENERAL ORDER | DISTRIBUTION A | EFFECTIVE DATE 04/01/84 | GENERAL ORDER NO. 12.4 |
|---|---|---|---|

| CHAPTER MEDICAL AND HEALTH CARE SERVICES | AMENDS | RESCINDS |
|---|---|---|

SUBJECT MENTAL HEALTH CARE PROGRAM

I. POLICY

The Department of Psychiatry operates on the basis of the theory that (abnormal) behavior results from various internal and external systems depending upon the individual. Often the psyche is effected in a conflictual manner, thus producing pain and suffering to the total system. The total system encompasses the individual, his family, friends, community, as well as all that the person interacts with. It is the purpose of this Department to alleviate this pain and suffering through intervention with the use of various internal and external systems, thereby, re-establishing the individual's pre-morbid personality. Whenever feasible and possible an attempt will be made to produce changes in the individual's acquired behavior thus causing positive psychological growth and societal impact.

Normally security is the priority consideration in any issue, except where there are therapeutic considerations. In such situations where the therapeutic decision would be the primary consideration, every effort will be made to make a joint decision. (See Harrington v. DeVito et. al).

If such resolution is not forthcoming, the matter shall be directed to the next person in the chain of command. Specifically, the Line Officer and direct client therapist, when in conflict with regard to a treatment issue would each report to his or her respective superior. A staff meeting will be convened with both superiors addressing the issues brought to them by their respective subordinates. If a satisfactory resolution regarding the conflict is not achieved at that level of command, the Chief of Security, Coordinator of Clinical Program) would then be involved in the decision making process. Should resolution of the conflict not be achieved at that level, the Director of Security for the Cook County Department of Corrections would meet with the chairman of the Department of Psychiatry to address and resolve the issue.

All inmates are provided access to a comprehensive mental health program within the compound of the Cook County Department of Corrections. The mental health program is designed to examine, diagnose and provide access to treatment for all inmate patients who have significant medical illness.

A. Screening Services

Psychiatric screenings are provided by qualified mental health professionals who have been trained and are supervised by licensed individuals in their respective disciplines.

B. Mental Health Transfers

1084
CCSAO

1

The Department of Psychiatry of Cermak Health Services has an affiliation and funding agreement with the Illinois Department of Mental Health. Any inmate whose condition is beyond the range of services available within the programs provided by the Department of Psychiatry of Cermak Health Services will be transferred to a Department of Mental Health treatment facility based upon the interview and disposition provided by Illinois Department of Mental Health and Developmental Disabilities personnel. The screening and referral shall be provided in compliance with Illinois statutes regarding treatment of mentally disturbed individuals as reflected in current Illinois statutes.

C. Program Changes

Except for emergencies, all program changes regarding inmates identified as recipients of psychiatric services (mentally ill and retarded) shall be made only after consultation between the respective supervisors of security and psychiatric services.

II. DEFINITIONS

As used in this document, the following definitions shall apply:

A. Admission Criteria

A set of guidelines utilized to determine the propriety of treatment at the Cook County Department of Corrections. Admission to a treatment modality of the Department of Psychiatry of Cermak Health Services or by a professional staff of the Department of Psychiatry. The admission is based upon the the clinical evidence warranting psychiatric treatment, and the availability of the appropriate treatment modality. It is for this purpose that admission is made only by the appropriate professional staff. The staff will follow the admission policy and procedure statements detailed in policy 3.301, 3.401, 5.501 and 3.601 as stipulated in the Policy and Procedure Manual of the Department of Psychiatry.

B. Acute Care Unit

The Acute Care Unit (ACU) is the psychiatric treatment unit in Division III (Women's Division). The unit is designed to provide psychiatric services to female patients of the Department of Psychiatry who are in need of residential treatment isolated from the normal jail population. Patients housed on the unit are provided by the Department of Mental Health at a State funded facility for in-patient treatment.

C. Ambulatory Care

The Ambulatory Care division of the Department of Psychiatry is the unit of the Department of Psychiatry that provides follow-up and consultation services to psychiatric patients housed in the general population of the Cook County Department of Corrections. Services are provided by the Department of Psychiatry Mental Health Professionals and other medical staff with the goal of

1085
CCSAO

maintaining the patient in the general population and facilitating maximizing his/her adaptive behavior while in the most appropriate environment. The Ambulatory Care Unit provides services similar to the treatment provided by a community mental health center. The Ambulatory Care Unit also provides staffing for the Diagnostic Unit of the Department of Psychiatry.

D. Acute Psychiatric Intensive Care Unit

The Acute Psychiatric Intensive Care Unit (APICU) is a ward at the North end of the 3rd floor of Cermak Hospital Building. It is a comprehensive psychiatric in-patient unit comparable to an Illinois Department of Mental Health and Developmental Disabilities Psychiatric Intensive Care Unit. Treatment focuses upon quick remediation of the patient's symptomatology and psychopathology, with remission of symptoms being one of the criteria for discharge from the unit. Admission to APICU is made by professional staff of the Department of Psychiatry and a physician's order.

E. Discharge Criteria

Discharge criteria from various components of psychiatric treatment are determined by the Department of Psychiatry. The criteria are applied on an individual case basis, depending upon the specifics of the patient's presenting problems. The clinical team at each of the treating sites makes recommendations for discharge to the physician responsible for the treatment modality. Based upon the team's recommendations and the psychiatrist's clinical assessment of the patient's condition, a discharge to an appropriate modality of treatment is made.

F. Isolation

Isolation is a psychological/psychiatric intervention involving the removal of the patient from disturbing stimuli or other milieu into a more controlled environment. As contained here, isolation is the process of removing the patient from the milieu into an identified area of seclusion with the intent of allowing the patient to adjust to the anxiety he or she is experiencing and be able to re-adapt to the milieu.

G. Parenteral Administration

Not intestinal; administered other than through the digestive tract, i.e., intravenously, intramuscular.

H. Psychiatrically Trained Officer

The psychiatrically trained officers (Psych Officers) are individuals who have completed a 10 week specialized training course from the Department of Psychiatry of Cermak Health Services or its designee, and who are assigned to psychiatric service areas.

I. Residential Treatment Unit

1086
CCSAO

3            3      GO      12.4

The Residential Treatment Unit (RTU) is a psychiatric residential program. The patient population is typical of patients hospitalized at state facilities in chronic need of mental health care.

J.  Restraints

A medical procedure used when clinically indicated to prevent a patient from harming themselves. The use of restraints for therapeutic purposes are implemented only upon recommendation and medical order initiated by the appropriate staff. Restraints are used exclusively to provide treatment to a patient who is an imminent threat to themselves or others as a function of psychiatric patients to insure the propriety of the order and the monitoring of the medical condition of the patient while he or she is restrained.

K.  Substance Abuse Program

The Substance Abuse Program is a poly-substance abuse treatment program housed within the RTU building. The program is operated by Gateway House Foundation Inc. and Treatment Alternatives to Street Crimes (TASC). The purpose of the Substance Abuse Program (SAP) is to provide a highly structured introduction to chemical abuse rehabilitation to those individuals who are referred and accepted into the program. The program linked individuals who have been discharged from the Cook County Department of Corrections to facilities outside the Cook County Department of Corrections complex when indicated. The program is a peer group program using a multifacted approach to treatment. Acceptance into the program is based upon staff determination or court order. Individuals with a bond exceeding $25,000 dollars are excluded from the program unless they are remanded to the program by a court order.

L.  Suicide Precautions

Suicide precautions are medical procedures initiated as a consequence of a physician or clinical staff decision to observe the patient for the potential to be harmful to himself or herself or others. Suicide precautions are utilized in the following areas: ACU, APICU, RTU. Depending upon the nature of the patient's psychiatric condition, various means of precautions are utilized as determined appropriate by the clinical staff.

PROCEDURES

A.  Mental Health Services

The following services are available to inmates coming into the Cook County Department of Corrections.

1.  New admission screenings for all new detainees by psychiatrically trained officers and clinical staff of the Department of Psychiatry. Referral is made by the psych officer to the

clinical staff for extensive diagnostic evaluation. Referral is based upon the history the inmate presents at the time of ingress or the psych officer's assessment of the individual's mental status, warranting extended diagnostic appraisal. Referral is made to the clinical staff at the time of ingress in the receiving room of the Men's Division. For female detainees, a referral is made from the receiving room to the professional staff in the psychiatric services area of Division III.

2. Inmates who present behavior symptomatic of a psychiatric disorder while in the general population are referred to the Department of Psychiatry for evaluation in the following manner:

   a. Use of the request for non-emergency psychiatric evaluation;
   b. Referral to the medical staff within the Division for transfer of the inmate to Cermak Health Services building for an evaluation in the Surgical Dispensary

3. Based upon the determination by the clinical staff of the need for treatment, a disposition is made to transfer the psychiatric patient to the appropriate treatment modality. An admission note or transfer note is generated by the clinical staff authorizing the movement of the psychiatric patient to the receiving site which will provide the indicated psychiatric services.

B. Counseling

Counseling services are provided to psychiatric patients in the following modalities:

1. Individual patient sessions in outpatient setting, APICU, ACU, RTU, or the Receiving Room;

2. Group counseling is provided in the various treatment modalities based upon the program of the treatment modality.

   a. Alcohol addiction
   b. Drug addiction
   c. Peer relations
   d. Education
   e. Drug free life style

   The above group treatment issues are addressed in the Substance Abuse Program of the RTU.

3. Group Counseling related to specific problem areas such as:

   a. Family relationships
   b. Violent behavior
   c. Peer relations
   d. Adaptive behavior

e. Emotional control

are provided in treatment modalities under the direction of the Department of Psychiatry of Cermak Health Services, (ACU, APICU, RTU).

4. Special group training courses are provided to employees in treatment modalities where group treatment and group therapy are the primary modes of intervention.

C. Psychiatric Emergencies

Psychiatric evaluations are provided to inmates as they are brought to the attention of the psychiatric staff. A psychiatric emergency is defined as any condition that threatens the patients physical welfare. Examples are:

1. Any suicidal attempt, gesture, or serious ideation.
2. Any real or potential violence of the patient to himself or others as a result of a suspected mental illness.
3. Maladaptive functioning or bizarre behavior which becomes life threatening.

Psychiatric emergencies should be referred to Cermak Hospital Emergency Room IMMEDIATELY.

1. The officer transporting the patient to the Cermak building shall report to the back door security officer regarding the patient. After the inmate's movement is recorded in the log book, between the hours of 8:00 a.m. and 4:00 p.m. Monday through Friday, the patient is taken to the 3rd floor of Cermak (Rm. 350) for the psychiatric evaluation. If the patient is to be admitted to APICU, the patient is then returned to the first floor for a physical evaluation by the physician.

2. During hours other than those specified in #1 above, the officer will report to the back door officer. A psychiatric evaluation will be performed by the ambulatory care staff between the hours of 4:00 p.m. and 10:00 p.m. Monday through Friday. On weekends and holidays Ambulatory Care staff is available to perform psychiatric evaluations on the following basis:

At. Cermak E.R. in RCDC (Division V) or Cermak E.R. depending upon activity in the Receiving Room:

             10:00 a.m. to 12:00 noon
             12:00 noon to 6:00 p.m.

3. At other times (after 10:00 p.m. through 8:00 a.m. Monday through Friday; after 6:00 p.m. through 10:00 a.m. on week-ends and holidays) the physician at the E.R. performs the psychiatric evaluation.

1089
CCSAO

Procedures for handling psychiatric emergencies:

1. Upon identifying an inmate requiring immediate attention for a psychiatric evaluation or for psychiatric services, the officer in charge shall remove the client and take the necessary security measures to move the inmate and utilize the most humane restraint methods available to prevent the person from harming themselves or others. The patient is to be moved to the Cermak Dispensary (back door) as soon as possible observing all security precautions and procedures.

2. While awaiting medical assistance, the inmate shall not be left alone and shall be observed closely by the staff.

3. If the inmate is violent or dangerous, he shall be placed alone in a cell while awaiting transfer for psychiatric evaluation and treatment. This shall be authorized by the shift supervisor.

4. Suggestions for handling a disturbed inmate, particularly one who is potentially violent, are:

   a. Take time to analyze the situation and give the inmate time to regain his/her composure.
   b. Reassure the inmate of your desire to help them.
   c. Do not abuse or threaten the inmate in any way.
   d. Remain calm and kind, although firm.
   e. Do not lie or attempt to deceive the patient.
   f. Utilize handcuffs only when the situation warrants such an intervention.

5. Serious suicide attempts shall be treated with first aid by the medical staff.

6. Potentially harmful items such as razor blades, belts, matches, pens, pencils, mirrors, glasses and any sharp items shall be removed from the inmate in the cell in which he or she shall is placed. Any such actions shall be recorded in the log book.

7. Written reports of any suicide attempt shall be forwarded to the supervisor of the Department with copies to the Chief of Security and the Chairman of the Department of Psychiatry.

8. All officers are given 40 hours training as cadets. Annually officers in the general population are given refresher courses. Officers in psychiatric service areas are provided weekly clinical supervision by the clinical staff. Some signs and symptoms of possible mental illnesses are:

   a. Systematized delusions of persecution/grandeur with the rest of the personality remaining relatively intact;

   b. Delusions of grandeur/persecution, with hallucinations or constant attitude of suspicion and hostility.

c. Intense anxiety or exaggerated levels of fear or panic in the absence of any real and present danger. An example would be a particular phobia (an irrational and persistant fear) of something or some situation, e.g., germs, crowds, heights.

d. Shallow, inappropriate emotional responses, silliness, bizarre delusions, unpredictable laughing.

e. Hallucinations, such as hearing, seeing, tasting or smelling something or someone that is not present at the moment. An example would be hearing voices coming from a vent duct commanding the inmate to perform a particular action or behavior.

f. Extreme depression, withdrawal, neglect of hygiene and personal appearance, psychomotor retardation, refusal to eat or leave the cell for long periods of time, periods of uncontrollable crying. An example may be, an inmate's refusal to wash, take showers or participate in any exercise or recreational programs.

g. Exaggerated mood swings, from elation and over-activity to depression and under-activity, or a combination or alteration of these.

h. Appetite loss or eating problems.

9. Signs and symptoms of potential suicide cases are:

a. Loss of interest in activity or relationships which the inmate had previously enjoyed or participated. An example would be a serious reduction in recreational exercise activities or refusing visits.

b. A depressed state, indicated by withdrawal, periods of crying, insomnia, lethargy.

c. Extreme restlessness, pacing up and down in a robot like manner.

d. Past history of suicide attempts.

e. Active expression of suicide plans.

f. Sudden drastic change in eating or sleeping habits.

g. Sudden change in the patient's behavior as a consequence of going to court or anticipated court appearance.

h. Sentencing or a verdict being handed down with a period of time awaiting sentencing.

These conditions warrant attention as they may lead to a suicidal attempt. In such instances refer the patient for a psychiatric evaluation.

1091
CCSAO

D.  <u>Non-Emergency Request for a Psychiatric Evaluation</u>

A psychiatric evaluation should be requested when the inmate displays difficulty adjusting to his/her living situation. Behaviors which are identified as inappropriate are indications of the need for an evaluation.

Examples are:

1.  Any inmate who wanders into another's area;
2.  Fighting with other inmates;

    Requests for a psychiatric evaluation are to be forwarded to the Department of Psychiatry Ambulatory Care staff or a Cook County Department of Corrections Non-Emergency request for psychiatric consultation. The officer initiating the request should indicate what behaviors or observations he/she has made regarding the patient. These observations are transmitted on the request form. The Ambulatory Care staff assigned to the Division will complete the evaluation within 48 hours of receipt.

E.  <u>Psychiatrically Trained Officer</u>

The psychiatrically trained officer (Psych Officer) is an officer who has completed a comprehensive training program provided by the Department of Psychiatry or its designee. The program lasts at least 10 weeks and provides theoretical foundations in applied psychiatry and mental health systems. The officers provide therapeutic interventions in addition to routine security procedures. The therapeutic interventions vary depending upon locale. The lists indicated below are representative but not inclusive of all responsibilities with respect to psychiatric treatment.

In the RTU, the Psych Officer provides the following treatment in addition to security responsibilities:

1.  Observe inmates within his/her dormitory for evidence of psychiatric disorder.
2.  Conduct unit meetings to discuss issues arising in the treatment milieu.
3.  Clarity staff expectations for patient behavior.
4.  Gives clear and objective feedback to the patients.
5.  Conducts group therapy meetings as a co-leader with the clinical staff members.
6.  Conducts one to one interviews with inmates to examine adjustment to the dormitory and compliance with the treatment program.
7.  Contacts mental health clinics, substance abuse facilities, etc., to refer inmates for treatment after release from jail under the direction of the clinical staff.
8.  Attends and participates in patient staffings.
9.  Attends and participates in team meetings;
10. Adheres to the Illinois State Mental Health Code and

Confidentiality Act;
11. Conducts recreational groups;
12. Leads physical exercise;
13. Conducts specialty groups;
14. Encourages patient hygiene and insures that patients receive the proper supplies;
15. Relates to human service workers;
16. Receives clinical supervision from the Department of Psychiatry clinical staff regarding patient's interactions, actions, dynamics, and treatment interventions.

On the APICU the duties and responsibilities of the Psych Officer are identical to those on the RTU treatment team.  The additions are:

1. The officer does routine rounds.;
2. For individuals in isolation/seclusion/restraints/suicidal precautions; the officer performs and documents 15 minute rounds with the nursing staff.  The officer accompanies the nursing staff in the conduct and performance of their routine treatments.

In Division III the officers provide all of the duties delineated in the RTU and APICU sections with the addition of primary assessments for incoming female detainees.

In the Receiving Room of Division V (RCDC) psych trained officers are utilized to perform psychiatric primary screenings exclusively.  The psych trained officers refer those individuals needing psychiatric services to the clinical staff for an extensive psychiatric diagnostic evaluation.

In the general population, psychiatrically trained officers provide initial screening and referral to the clinical psych staff for extended evaluation or coordination of treatment. Based upon the officer's assignment by his or her superior, the officer may be responsible for programming on a psychiatric wing or provide primary assessments and screenings as a function of their duties.  The psych officer in the general population serves as a resource person for their colleagues coordinating referrals to the clinical psych staff.

F.  Psychiatric Transfer Hearings

A complete hearing and evaluation is performed by the Illinois Department of Mental Health and Developmental Disabilities personnel when an inmate is being transferred to a long term psychiatric facility.  Such transfers are usually initiated as a consequence of the person being found unfit to stand trial or not guilty by reason of insanity.  In the above instances an evaluation is performed by the IDMH-DD representative to ascertain the most appropriate facility.  Individuals are referred to this type of treatment from the court's services system.  Specifically, referrals come from the Psychiatric Institute which is responsible for the determination of a person's competence to stand trial or competency at the time

1093
CCSAO

the alleged act occurred.

G. <u>In-Service Training</u>

The Department of Psychiatry provides in-service training to its clinical staff and security. The purpose of in-service training is to keep the staff abreast of current state of the art treatment interventions and provide refresher courses for individuals who do not routinely utilize their clinical skills. In-service training focuses on the needs of the professional staff to enhance their ability to perform the specific responsibilities of their profession. The unit of education of the Department of Psychiatry coordinates in-service training.

H. <u>Training and Research</u>

In keeping with the needs of the staff of the Department of Psychiatry of Cermak Health Services; to remain well versed in current treatment modalities and services, research is occasionally conducted concerning the provision of clinical services. Such research conforms the standards of Cook County Hospital which have been approved by the Cook County Department of Corrections and the Department of Psychiatry of Cermak Health Services. Invasive procedures are discouraged. Training is provided to residents, interns, and practical students from various medical and professional schools specializing in the fields of psychiatry/psychology.

I. <u>Confidentiality</u>

Only those individuals who have been credentialed to handle medical/psychiatric charts shall have access to psychiatric records. Such individuals are bound by the Confidentiality Act and liable for their handling of said charts. Only those individuals who are eligible to handle a psychiatric chart (specifically professional staff by virtue of their degrees and professional status and psychiatrically trained officer who have been credentialed by the Department of Psychiatry) shall have access to charts for the purposes of reading and charting. Individuals who have access to the charts shall abide by the specifics of the Confidentiality Act of the State of Illinois.

J. Linkage with community mental health facilities for treatment post-discharge from the Department of Corrections is currently being provided via psychiatrically trained officers. They are responsible for contacting the mental health center which is the appropriate follow-up site for the psychiatric patient. Contact is supervised and coordinated by the clinical staff of the Department of Psychiatry.

K. <u>Discipline</u>

Current recipients of psychiatric services are expected to adhere to all applicable rules and regulations of the Cook County Department of Corrections. For the purpose of ensuring adherence to the rules, a Disciplinary Hearing Board is convened in

1094
CCSAO

accordance with the Department of Psychiatry's policy 3.405 when warranted.

L. Prison Health Services and the Department of Corrections shall develop an operations manual that will contain the duties of Correctional Officers and the staff of Prison Health Services. This operations manual shall include but not be limited to the amount of staff assigned, assignments, schedules, procedures, and all information pertaining to the operation of the Residential Treatment Unit and the Acute Care Unit.

1095
CCSAO



| COOK COUNTY<br>CORRECTIONS DEPARTMENT<br>GENERAL ORDER | DISTRIBUTION<br>A | EFFECTIVE DATE<br>04/01/84 | GENERAL<br>ORDER NO.<br>12.5 |
|---|---|---|---|
| CHAPTER MEDICAL AND HEALTH CARE SERVICES | AMENDS | | RESCINDS |
| SUBJECT DENTAL CARE | | | |

I. **POLICY**

Dental care shall be provided to each inmate under the direction and supervision of a dentist and other fully qualified professionals authorized to provide care in accordance with state and/or federal licensure requirements. The health services department and the dentist shall provide services necessary to afford the inmate basic dental care within constraints of available resources.

II. **DEFINITIONS**

None

III. **PROCEDURES**

A. **Dental Services Offered**

The following dental services shall be provided either in-house or through an outside contracted dentist.

1. All newly admitted inmates shall receive a dental examination within 14 days of admission.

2. Whenever a patient is examined, the patient shall receive immediate treatment on an emergency basis and be given a specific appointment date or referred to the dental clinic under the classification system listed below. This structuring of priorities for dental care is not a replacement for professional dental judgment. Rather it is a guide for providing dental care to a specific population whose incarceration places time limitations upon available dental care.

a. Category I (C-I) includes inmates with the following symptoms or conditions:

(1) An oral condition which, if left untreated, would cause bleeding and/or pain in the immediate future.

(2) An oral infection or oral condition which, if left untreated, would become acutely infectious.

(3) An oral condition such as edentulousness or missing upper or lower anterior teeth which presents a psychosocial or physical problem to the inmate's sense of well being, confidence and adjustment.

(4) An undiagnosed or suspected oral condition such as an ulcerative lesion or growth of tissue

1096
CCSAO

1

b.  Category II (C-II) includes inmates with the following symptoms and conditions:

(1)  The presence of medium to large non-painful carious lesions.

(2)  A localized gingival involvement.

(3)  Class II, Class III or Class IV fractured anterior tooth or teeth.

(4)  The presence of temporary, sedative or intermediate restorations.

(5)  Broken or ill-fitting prosthetic appliance.

c.  Category III (C-III) includes inmates with the following symptoms and conditions:

(1)  Small carious lesions which radiographically present an imminent danger to the pulp.

(2)  The need for dental restorative procedures with significant laboratory costs involved, such as cast partial dentures.

(3)  The use or restorative procedures involving the use of precious metals.

(4)  Severe nonfunctional bite and malocclusion which involves social-psychological factors in the inmate's appearance and potential for adjustment.

d.  Category IV (C-IV) includes inmates with the following symptoms and conditions:

(1)  A radiographical absence of carious lesions.

(2)  Lack of clinically visible gingival irritation.

e.  Category V (C-V) includes inmates with no symptoms or apparent need for dental treatment related to the type of assessment or inspections performed.

3.  Emergency conditions requiring immediate evaluative treatment may include:

a.  Bleeding and pain
b.  Acute periapical abscess
c.  Acute periodonitis
d.  Vincents infection
e.  Acute gingivitis
f.  Acute stomatitis
g.  Fractures of teeth

1097
CCSAO

h.  Fracture of jaw(s)
i.  Gaping wounds of lip and cheek

4.  Any employee who has reason to believe an inmate is
    experiencing any of the above emergency conditions shall
    notify the dental clinic or the Medical Officer on duty and
    request instructions.  The dental/medical staff shall
    examine the referred patient, evaluate the condition, and
    treat or refer the patient to the appropriate provider of
    remedial services.

5.  Routine dental services available to all inmates shall
    include:

    a.  Examinations
    b.  X-rays
    c.  Oral prophylaxis
    d.  Composite fillings
    e.  Amalgam fillings
    f.  Medicated fillings
    g.  Extractions
    h.  Treatment of infections
    i.  Full dentures (if indicated)
    j.  Partial dentures (if indicated)
    k.  Repair of dentures
    l.  Medical consultations
    m.  Preparing patients for oral surgery
    n.  Postoperative treatment following surgery
    o.  Contractual oral surgery and other services as
        ordered by the dentist.

6.  All inmates requiring emergency dental care will be treated
    or stabilized prior to transfer.  Information on the
    inmate's emergency dental care or pending surgery will be
    relayed to the receiving institution.

B.  Dental Records

All dental records shall be considered confidential, and shall
be maintained for all patients to include:

1.  Records of all dental examinations conducted by dental
    staff.

2.  Record of consultations with part time or contract
    dentists.

C.  Dental Prostheses

Requests shall be processed as follows and to the extent
required.  Because of the short term nature of the inmates at
the Cook County Department of Corrections, Dental Prostheses
will not be routinely provided.  If the Dentist determines that
the inmate's health will deteriorate without Dental Prostheses
then steps will be taken to procure it.

1098
CCSAO

3

# Cook County Department of Corrections
## General Orders



| | | | | |
|---|---|---|---|---|
| Issue Date | 09/01/93 | Effective Date | 10/01/93 | Amends |

| | | | | |
|---|---|---|---|---|
| | | | Rescinds | |

| Chapter | MEDICAL AND HEALTH CARE SERVICES | Page | 1 | of | 3 |

| Subject | SICK CALL | General Order # | 12.6 |

## I. POLICY STATEMENT

It shall be the policy of the Cook County Department of Corrections that sick call will be conducted at fixed, regularly scheduled times, as provided for by Cermak Health Services.

## II. PROCEDURE

A.  Purpose – The purpose of this General Order is to establish written guidelines for scheduling and detainee access to sick call.

B.  Applicability – This General Order is applicable to all employees of Cermak Health Services and the Cook County Department of Corrections (as appropriate). All Manual Holders shall familiarize themselves with the contents of this order, shall review the contents of this procedure with all employees under their supervision as appropriate, and shall strictly adhere to its provisions.

C.  Internal Audits – Internal audits of this procedure shall be conducted as scheduled.

D.  Definitions

As used in this document, the following definition shall apply:

Sick Call – An organized method of determining detainee health problems through a regularly scheduled clinic staffed by physicians and physician assistants at which time history, examination, treatment, testing, referral, and follow-up is accomplished and coordinated.

## III. REQUIREMENTS

A.  Sick call sessions staffed by a physician and a physician assistant will be held on a weekly basis in each division as scheduled by Cermak Health Services.

B.  Screening for sick call will be held on each living unit daily, including isolation cells of every division. A specially trained emergency medical technician (EMT) or nurse on the



# Cook County Department of Correction

## General Orders

| Issue Date | 09/01/93 | Effective Date | 10/01/93 | Amends | | Rescinds | |
|---|---|---|---|---|---|---|---|
| Chapter | MEDICAL AND HEALTH CARE SERVICES | | | | | Page 2 of 3 | |
| Subject | SICK CALL | | | | | General Order # | 12.6 |

Cermak Health Services staff will triage every medical complaint presented by detainees.

C. EMT's/Nurses shall triage all complaints as follows:

1. Records the detainee's name, number and medical complaint.

2. Examine the patient to the extent indicated.

3. Provide appropriate treatment based on the EMT Manual or Nursing Policy Manual.

4. Schedule the detainee for an appointment at the next sick call.

5. Refer immediately to Cermak's Surgical Dispensary/ Emergency Room for emergency medical care.

D. All detainees are permitted to present their requests and complaints without restriction.

1. The EMT/Nurse will deliver a movement list for those individuals requiring physician or physician assistant evaluation.

2. The list shall be delivered to the division's security office no later than the evening prior to the sick call session.

E. A detainee may request and shall be permitted to register a health care complaint with the Chief Operating Officer or Medical Director of Cermak.

F. A member of the correctional staff shall assist the sick call officer with detainee control and movement.

G. Emergency Sick Call

Daily 24-hour coverage is available at Cermak Health Services' Emergency Room/Surgical Dispensary. Any employee of the facility who have reason to believe a detainee is in need of emergency care shall contact the EMT/Nurse assigned to that Division for evaluation and emergency assessment.

1100
CCSAO



# Cook County Department of Correction

## General Orders

| Issue Date | 09/01/93 | Effective Date | 10/01/93 | Amends | | Rescinds | |
|---|---|---|---|---|---|---|---|

| Chapter | MEDICAL AND HEALTH CARE SERVICES | Page | 3 | of |
|---|---|---|---|---|

| Subject | SICK CALL | General Order # | 12.6 |
|---|---|---|---|

1. The EMT/Nurse (or correctional officer or other non-medical employee if an EMT/Nurse is not available) will then contact the Surgical Dispensary Physician or Nurse for instructions.

2. The medical staff will evaluate the complaint and examine the patient unless adequate medical information suggests another more appropriate action.

H. Segregated Detainees

Sick call screening for detainees in administrative detention and disciplinary segregation shall be conducted daily. Procedures as required by the Medical Director and the conditions of segregation shall be followed.

1. The EMT conducting the segregation sick call screening shall record and indicate dispositions for all complaints.

2. The EMT shall contact visually, all segregated detainees daily and record appropriate information on the encounter forms.

3. Weekly rounds of each segregation unit will be made by a Physician Assistant who will evaluate each individual, appropriately triage, and inspect and report on the physical condition of the units from a health perspective.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Authorized By:

_____  9/13/93
Chief Operating Officer    Date
Cermak Health Services

_____  8/30/93
J. W. Fairman, Jr.         Date
Executive Director



| COOK COUNTY CORRECTIONS DEPARTMENT GENERAL ORDER | DISTRIBUTION A | EFFECTIVE DATE 04/01/84 | GENERAL ORDER NO. 12.7 |
|---|---|---|---|
| CHAPTER  MEDICAL AND HEALTH CARE SERVICES | AMENDS | RESCINDS | |
| SUBJECT  SPECIAL HEALTH CARE PROGRAMS | | | |

## I. POLICY

A written individual treatment plan shall be developed by the appropriate physician, dentist or other qualified health care practitioner for each prisoner who has special health care needs. The plan shall include a statement of short term and long term medical goals, specific sources of therapy and provisions for referral to supportive and/or rehabilitative services when necessary.  The following special health care programs are available at this facility:

A. Chronic care
B. Convalescent care
C. Detoxification programs for alcohol, opiates, hypnotics or other narcotic addictions
D. Mentally retarded care
E. Health education programs
F. Care for the handicapped

## II. DEFINITIONS

As used in this document, the following definitions shall apply:

A. <u>Chronic Care</u> – Health care provided to patients over a long period of time.

B. <u>Convalescent Care</u> – Health care provided to patients recovering from illness or injury.

C. <u>Detoxification</u> – The gradual withdrawal of an individual from a drug.

## III. PROCEDURES

A. <u>Plan Development</u>

The attending physician shall develop a written treatment plan for each inmate who requires a special health care program.  Identification of these patients shall be made through staff referral, sick call, physical examination or inmate self referral.

B. <u>Chronic Care</u>

All inmates diagnosed as having chronic illness will be examined by a Physician Assistant at the time of admission to the Cook County Department of Corrections and immediately referred for Physician evaluation if required.  These chronically ill individuals will be seen again within three days of admission at

1102

CCSMOt

the institution in their Division's Sick Call Clinic. All inmates with chronic illness will be evaluated at least monthly at the time of medication renewal. All inmates with chronic illness transferred from the Cook County Department of Corrections to another will be accompanied by Medical Information Transfer Sheets which contains diagnoses, current medications, and recommendations for follow-up care:

1. Housing assignment
2. Work assignment restrictions, if any
3. Medication prescribed
4. A description of any restriction to be placed upon any program activity

C. Convalescent Care

The Surgical Dispensary Attending Physician shall be responsible for determining the proper medical placement for patients requiring close observation during post-operative recovery or recovery from other illness or injury. Such patients shall be admitted to the institution Convalescent Unit with the approval of the Surgical Dispensary Attending Physician.

D. Detoxification and Alcohol or Chemical Dependency

Whenever a patient is diagnosed as chemically dependent by the Medical Director or designated physician, the responsible physician shall develop an individualized treatment program based on the need for pharmacological or non-pharmacological support care as follows:

1. All inmates who are documented to be in a community based methadone program will be appropriately examined and placed on a 21 day Methadone Detoxification Protocol. The program is coordinated by the Cermak Health Services Pharmacy. Pregnant women who are dependent on Methadone may be maintained on Methadone for the duration of their pregnancy if so decided by the Medical Director or his Physician designee.

2. All other alcohol or chemically dependent inmates will be individually evaluated for signs and symptoms of withdrawal. Appropriate supportive care up to and including hospitalization will be determined by the attending physician.

3. Any alcohol or chemically dependent inmate will be allowed to request admission to the TASC or Gateway Counseling Program. These requesting individuals will be interviewed and evaluated by the Counseling Programs' Representatives for entrance into the Program.

E. Health Education

Programs shall be provided for all inmates on the importance of preventive medicine in developing sound personal health care

1103
CCSAO

programs. These educational programs shall include the following components:

1. Initial admission-orientation sessions.

2. Regular distribution of instructional health materials through internal publications.

3. Cooperation with staff programmers in providing training programs for inmates to encourage good health habits.

4. Educational programming for inmates including information on the following:

   a. First aid procedures
   b. Emergency procedures
   c. Personal hygiene
   d. Self care for chronic illnesses
   e. Effects of smoking, drug and alcohol abuse
   f. Communicable disease control including tuberculosis and venereal disease
   g. Dental hygiene
   h. Dangers of self medication
   i. A discussion of the services and facilities available to assist inmates who have specific health care problems.

F. <u>Disabled Inmates</u>

All disabled and infirmed inmates shall be housed in facilities appropriate to their needs and in such a manner as allows equal access to programs. Prior to the placement of such inmate in any housing unit, program or work assignment, the Medical Director or designated physician shall be consulted with regards to medical coverage and environmental needs. Every possible effort shall be made to allow disabled inmates to participate in regular programming. Any inmate who is not allowed to participate in regular programming shall be the subject of a written report by the correctional staff to the Assistant Director (Programs) outlining the medical restrictions which prohibit program participation. The Assistant Director (Programs) shall evaluate the report and consider possible transfer of the inmate to a more appropriate facility.

Any inmate who is unable to be properly cared for in the Convalescent Unit will be transferred to Cook County Hospital or Oak Forest Hospital for appropriate treatment and housing.

1104
CCSAO

# Cook County Department of Correction
## General Orders



| Issue Date | 09/01/93 | Effective Date | 10/01/93 | Amend | | Rescind | |
|---|---|---|---|---|---|---|---|
| Chapter | MEDICAL AND HEALTH CARE SERVICES | | | | | Page | 1 of |
| Subject | PROHIBITION OF MEDICAL EXPERIMENTATION | | | | | General Order # | 12.8 |

## I.  POLICY

It shall be the policy of Cermak Health Services and the Cook County Department of Corrections that no officer, employee or agent of these Departments shall permit any form of medical or drug experimentation involving the use of detainee subjects to be undertaken by either medical staff or outside researchers.

## II.  PROCEDURE

A.  Purpose – The purpose of this General Order is to establish written guidelines for the prohibition of medical experimentation of detainees.

B.  Applicability – This General Order is applicable to all employees of Cermak Health Services and the Department of Corrections.  All Manual Holders shall familiarize themselves with the contents of this order, shall review the contents of this procedure with all employees under their supervision as appropriate, and shall strictly adhere to its provisions.

C.  Internal Audits – An internal audit of this General Order is not required.

D.  Definitions

As used in this document, the following definitions shall apply:

1.  Medical Experimentation – All in vivo and in vitro biological experimentation involving detainee subjects.

2.  Drug Experimentation – All research involving the testing of drug effectiveness and side effects utilizing detainee subjects.

## III.  REQUIREMENTS

A.  Under no circumstances shall any officer, employee or agent of either Cermak Health Services or the Department of Corrections permit any form of medical or drug experimentation involving the use of detainee subjects.  This policy does not

1105
CSAO

Case: 1:10-cv-00897 Document #: 75-12 Filed: 01/13/12 Page 43 of 50 PageID #:897

# General Orders

| | | | | |
|---|---|---|---|---|
| COOK COUNTY SHERIFF | Issue Date 09/01/93 | Effective Date 10/01/93 Amends | Rescinds | |
| CORRECTIONAL DEPT. | Chapter MEDICAL AND HEALTH CARE SERVICES | | Page 2 of | |
| | Subject PROHIBITION OF MEDICAL EXPERIMENTATION | | General Order # 12.8 | |

preclude the use of normal laboratory and diagnostic services required for the proper evaluation and treatment of detainee medical problems or individual treatment of a detainee based on his/her need of a specific procedure not generally available.

B. Cermak Health Services shall permit statistical and management studies involving the study of patient utilization patterns and management.

C. Psychological or psychiatric research may be conducted only as allowed by the regulations governing social science research as set forth in "Research Activities."

D. Any employee, officer or agent who receives a request for or observes an action which involves, or appears to involve, medical or drug experimentation using detainee subjects, shall immediately report such contact and/or observations to his/her supervisor in writing, and a copy of the report shall be forwarded to the Chief Operating Officer of Cermak Health Services.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Authorized By:

_____  9/13/93
Chief Operating Officer      Date
Cermak Health Services

_____  8/30/93
(J. W. Fairman, Jr.)          Date
Executive Director

1106
CCSAO



Cook County Department of Corrections

# General Orders

| Issue Date 09/01/93 | Effective Date 10/01/93 | Amends | Records |
|---|---|---|---|
| Chapter MEDICAL AND HEALTH CARE SERVICES | | | Page 1 of |
| Subject INFORMED CONSENT | | | General Order # 12.9 |

## I. POLICY

A. The informed consent of a detainee shall be required for all examinations, treatments and procedures governed by informed consent standards in the community.

B. Any detainee desiring medical treatment is accorded the same right to bodily integrity available from a community medical facility.

C. In the case of minors, the informed consent of parent, guardian or legal custodian shall be required in accordance with state law.

## II. PROCEDURE

A. Purpose – The purpose of this General Order is to establish written guidelines governing medical consent for detainee medical treatment.

B. Applicability – This General Order is applicable to all employees of Cermak Health Services and the Department of Corrections. All Manual Holders shall familiarize themselves with the contents of this order, shall review the contents of this procedure with all employees under their supervision as appropriate, and shall strictly adhere to its provisions.

C. Internal Audits – An internal audit of this procedure shall be conducted as scheduled.

## III. REQUIREMENTS

A. Definitions

As used in this document, the following definition shall apply:

Informed Consent – Voluntary consent or agreement to a treatment, examination or procedure by the patient after the patient receives the material facts regarding the nature, consequences, risks and alternatives concerning the proposed treatment, examination or procedure.



General Orders

| Issue Date | 09/01/93 | Effective Date | 10/01/93 | Amends | | Rescinds | |
|---|---|---|---|---|---|---|---|
| Chapter | MEDICAL AND HEALTH CARE SERVICES | | | | | Page | 2 of |
| Subject | INFORMED CONSENT | | | | | General Order # | 12.9 |

B. Explanation of Risk – Prior to the initiation of a medical procedure, such as invasion of a body cavity, surgery or any medical procedure which is considered dangerous and involves a risk to the individual's life of health status, the physician or dentist shall explain the procedure, alternatives and risks to the detainee.

C. Written Consent – The detainee shall be requested to sign a written consent authorizing the specific treatment stated. This shall be included in the detainee's medical record.

D. Refusal of Treatment – If a detainee chooses to refuse treatment recommended as necessary by the medical staff, a Refusal to Submit to Treatment form shall be provided for signature. A medical staff member shall also witness the form by signature. This shall be filed in the detainee's medical record.

E. Records of Refusal – Any refusal for treatment shall be recorded by the treating health care staff on the progress notes sheet of the detainee's medical record.

F. Minors – For minors, the treating physician or dentist shall obtain the informed consent of the detainee's parent, guardian or legal custodian. The treating physician shall notify the Medical Director of the need for this informed consent. Appropriate arrangements for contacting the responsible guardian shall then be made by the physician or dentist.

G. Consent Waivers – The informed consent requirement shall be waived for the following:

    1. An emergency which requires immediate medical intervention for the safety of the detainee.

    2. Emergency care involving detainees who do not have the capacity or ability to understand the information given.

H. Communicable Diseases – For detainees diagnosed as having a communicable disease and refuse appropriate treatment, medical quarantine authorized by the treating physician shall be used. Treatment other than in an emergency situation shall not be forced by medical staff. For such cases, a court order for



# Cook County Department of Corrections

## General Orders

| Issue Date 09/01/93 | Effective Date 10/01/93 | Amends | Rescinds |
|---|---|---|---|

| Chapter    MEDICAL AND HEALTH CARE SERVICES | Page  3  of |
|---|---|

| Subject    INFORMED CONSENT | General Order #  12.9 |
|---|---|

treatment may be sought by the Chief Operating Officer of Cermak Health Services after consultation with his/her supervisors. The Department of Corrections' Executive Director may seek to obtain said court order as a last resort.

I.  Refusal of Appointment or Examination - Where a scheduled appointment with facility health care staff has been refused by a detainee, a "Refusal to Consent to Treatment" form shall be provided by Cermak staff for the detainee's signature. This refusal shall also be in the detainee's medical record.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Authorized By:

_____    _____    _____  8/30/93
Chief Operating Officer     Date       J. W. Fairman, Jr.         Date
Cermak Health Services                 Executive Director



# Cook County Department of Corrections
## General Orders

| Issue Date 11/01/93 | Effective Date 12/01/93 | Amends | Rescinds |
|---|---|---|---|

| Chapter MEDICAL AND HEALTH CARE SERVICES | Page 1 of 4 |
|---|---|
| Subject UTILIZATION OF PHARMACEUTICAL PRODUCTS | General Order # 12.11 |

## I. POLICY

A. All pharmaceuticals shall be prescribed in accordance with the formulary approved by the Cermak Health Services Drug and Formulary Committee, which shall govern the approved pre-scription and non-prescription medications allowed for use in the facility.

B. All prescriptions shall be signed by a qualified health pro-fessional licensed and authorized by the appropriate jurisdiction.

C. All personnel shall adhere to state and federal regulations relating to the dispensing, distributing or administering of medications. Medications shall be distributed or administered only by qualified members of the medical staff in accordance with the physician's orders.

## II. PROCEDURE

A. Purpose - The purpose of this General Order is to establish written guidelines governing storage, use and administration of pharmaceutical products.

B. Applicability - This General Order is applicable to all em-ployees of the Department of Corrections. All Manual Holders shall familiarize themselves with the contents of this order, shall review the contents of this procedure with all employees under their supervision as appropriate, and shall strictly adhere to its provisions.

C. Internal Audits - An internal audit of this procedure shall be conducted as scheduled.

D. Definitions

As used in this document, the following definitions shall apply:

1. Controlled Substances - Any medication requiring a written prescription listing the prescribing physician's or dentist's Drug Enforcement Administration registration number.

2. Formulary - A list of medicines with their formulas and directions for compounding them.

1110
CCSAO



# Cook County Department of Corrections
## General Orders

| Issue Date 11/01/93 | Effective Date 12/01/93 | Amends | Rescinds |
|---|---|---|---|

| Chapter MEDICAL AND HEALTH CARE SERVICES | Page 2 of 4 |
|---|---|

| Subject UTILIZATION OF PHARMACEUTICAL PRODUCTS | General Order# 12.11 |
|---|---|

III. <u>REQUIREMENTS</u>

A. Pharmacy Management

1. The Chief Operating Officer for Cermak Health Services shall require that all pharmacy procedures adhere to applicable state and federal laws, and to the regulations established by the Federal Controlled Substance Act relating to controlled substances.

2. Where prescriptions are generated by contract or consultant health providers, substitutions may be made in accordance with the approved guidelines established by Cermak's Drug and Formulary Committee.

3. All health care personnel shall conform to the ordering and inventory procedures as established. These guidelines include requirements for a weekly inventory of all controlled substances.

4. Deletions and substitutions for drugs listed in the Central Drug Formulary shall be approved by the Drug and Formulary Committee.

B Prescription Practices

The following procedures are required for prescription practices throughout the institutional health care section.

1. The long term use of minor tranquilizers and analgesics subject to abuse shall be discouraged unless clinically indicated.

2. "Stop-order" time periods shall be specified for all behavior modifying mediations and other medications subject to abuse, as determined by the institutional Medical Director. All controlled substances except anti-convulsants (e.g. Phenobarbital, Clonipin) can be written for a period up to 72 hours only. A re-evaluation shall be performed by the responsible physician prior to the renewal of such prescriptions.

3. Psychotropic medications shall be dispensed only when clinically indicated. When feasible, the patient shall be referred to the institutional psychiatrist for an evaluation of the patient's medication needs.

1111
CCSAO



## Cook County Department of Corrections
## General Orders

| Issue Date 11/01/93 | Effective Date 12/01/93 | Amends | Rescinds |
|---|---|---|---|

| Chapter MEDICAL AND HEALTH CARE SERVICES | Page 3 of 4 |
|---|---|
| Subject UTILIZATION OF PHARMACEUTICAL PRODUCTS | General Order # 12.11 |

4. Physician Assistants may prescribe medications only upon the authorization of the supervising physician. All verbal authorizations for prescriptions must be signed by the responsible physician within 24 hours of such authorization.

C. Medication Distribution or Administration

   1. Written procedures, approved by the Medical Director, shall govern the dosage system to be utilized for the various drug categories.

      a. All controlled substances shall be administered in a unit dose.

      b. All non-controlled substances shall be administered in unit doses. Exceptions to this policy shall be made only with the attending physician's written authorization.

      c. All over-the-counter medications may be distributed by qualified medical personnel without prior physician approval, subject to the written procedures approved by the institutional Medical Director.

   2. The administration of all medications shall be recorded on a form approved by the Medical Director and shall become part of the patient's medical record. The administration of each dose shall be documented with respect to the date and time of administration and shall be signed or initialed by the person administering the medication.

D. Security and Storage of Controlled Substances, Insulin and Syringes

   1. All controlled substances are to be kept on a perpetual inventory by the Pharmacy Director according to state and federal guidelines. Only nursing care areas with proper security requirements (double locked cabinets) can maintain a limited supply of controlled substances which are to be inventoried at the end of each shift change.

## Cook County Department of Corrections
## General Orders



| Issue Date 11/01/93 | Effective Date 12/01/93 | Amends | Rescinds |
|---|---|---|---|

| Chapter MEDICAL AND HEALTH CARE SERVICES | Page 4 of 4 |
|---|---|

| Subject UTILIZATION OF PHARMACEUTICAL PRODUCTS | General Order # 12.11 |
|---|---|

2. Request for controlled substances must be signed by the nurse for any nursing areas and dispensed by a pharmacist.

3. The Central Storekeeper shall maintain a perpetual inventory of all orders for needles and syringes which shall include the date, amount and area for which the syringes and needles were dispensed.

4. Copies of all storeroom orders for controlled substances and narcotics shall be kept on file by drug name and date issued by the pharmacy and storeroom.

F Over the Counter Drugs

Over the counter drugs and supplies can be stored in limited supply in all examination rooms and nursing care areas. These supplies can only be obtained through parstock or a written storeroom requisition. Copies of storeroom requisitions are to be filed by area and month.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Authorized By:

_____ 9/13/93
Chief Operating Officer    Date
Cermak Health Services

_____ 11/3/93
J. W. Fairman, Jr.    Date
Executive Director